1
2
3
4
5

UNITED STATES DISTRICT COURT

6

EASTERN DISTRICT OF WASHINGTON

7

TAHVIO GRATTON,

|  | NO. 1:22-CV-3149-TOR |

8

Plaintiff,

9

v.

ORDER GRANTING DEFENDANT'S MOTION FOR NEW TRIAL

10

UNITED PARCEL SERVICE, INC.,

11

Defendant.

12

13    BEFORE THE COURT is Defendant's Motion for New Trial, Amendment

14  of the Judgment, or Remittitur (ECF No. 271). This matter was submitted for

15  consideration with oral argument. The Court has reviewed the record and files

16  herein, considered the parties' oral arguments, and is fully informed.  For the

17  reasons discussed below, Defendant's Motion for New Trial, Amendment of the

18  Judgment, or Remittitur (ECF No. 271) is GRANTED.

19
20

ORDER GRANTING DEFENDANT'S MOTION FOR NEW TRIAL,
AMENDMENT OF THE JUDGMENT, OR REMITTITUR ~ 1

1

## BACKGROUND

2

Between September 9–12, 2024, this Court held a jury trial on Plaintiff's

3 claims of violations of the Washington Law Against Discrimination ("WLAD"),

4 42 U.S.C. §1981, and wrongful termination while employed with Defendant at its

5 Yakima facility.  At the conclusion of argument, the jury returned a verdict of

6 $39.6 million in compensatory damages.  ECF No. 236.  The Court provided an

7 extensive factual background of this matter in its Order Granting Judgment as a

8 Matter of Law pursuant to Federal Rule of Civil Procedure 50, where it vacated

9 punitive damages pursuant to 42 U.S.C. §1981(a).  ECF No. 265.  To the extent

10 that this Order relies on additional facts than those outlined in its prior Order, the

11 Court cites extensively to the record.  Defendant now moves for either a new trial

12 or remittitur of the awarded emotional distress damages.  ECF No. 271.

13

## DISCUSSION

14

As a basis for its request, Defendant first points to an outsized jury verdict

15 not based on the clear weight of the evidence and cites Plaintiff's counsel's use of

16 previously excluded evidence as prejudicial and therefor the basis of the disparity.

17 ECF No. 271 at 18.  Additionally, Defendant argues that a new trial is warranted

18 because the jury should have been further instructed on an affirmative defense

19 pursuant to the WLAD.  *Id*. at 23.  Alternatively, Defendant requests the Court

20 reopen a limited discovery for potential perjury discovered posttrial.  *Id*. at 7–9.

ORDER GRANTING DEFENDANT'S MOTION FOR NEW TRIAL,
AMENDMENT OF THE JUDGMENT, OR REMITTITUR ~ 2

1    Federal Rule of Civil Procedure 59(A)(1)(a) governs a new trial may be

2  granted "for any reason," in which a new trial had previously been granted in an

3  action at law in federal court.  The Ninth Circuit has held that "[t]he trial court may

4  grant a new trial only if the verdict is contrary to the clear weight of the evidence,

5  is based upon false or perjurious evidence, or to prevent a miscarriage of justice."

6  *Passantino v. Johnson & Johnson Consumer Prods*., 212 F.3d 493, 510 n.15 (9th

7  Cir. 2000); *see also Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)

8  (recognizing that historically new trials are granted on grounds such as "that the

9  verdict is against the weight of the evidence, that the damages are excessive, or

10  that, for other reasons, the trial was not fair to the party moving").  "Unlike with a

11  Rule 50 determination, the district court, in considering a Rule 59 motion for new

12  trial, is not required to view the trial evidence in the light most favorable to the

13  verdict."  *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829,

14  842 (9th Cir. 2014).  In consideration of a Rule 59 motion, the district court must

15  weigh the evidence as the court viewed it during trial and set aside the verdict

16  where in the court's "conscientious opinion, the verdict is contrary to the clear

17  weight of the evidence."  *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th

18  Cir. 1990).

19    The Verdict Form in the present matter considered emotional damages under

20  the WLAD, 42 U.S.C. §1981, and wrongful termination in violation of public

ORDER GRANTING DEFENDANT'S MOTION FOR NEW TRIAL,
AMENDMENT OF THE JUDGMENT, OR REMITTITUR ~ 3

1    policy holistically, all of which the jury found Plaintiff had proven.  ECF No. 236.

2    A district court sitting in diversity jurisdiction applies the relevant state law for

3    measuring excessiveness.  *Cosby v. AutoZone, Inc*., 445 Fed. Appx. 914, 916 (9th

4    Cir. 2011).  In Washington, if the trial court, "find[s] the damages awarded by a

5    jury to be so excessive or inadequate as unmistakably to indicate that the amount

6    thereof must have been the result of passion or prejudice, the trial court may order

7    a new trial or may enter an order providing for a new trial unless the party

8    adversely affected shall consent to a reduction or increase of such verdict."  RCW

9    4.76.030.  Washington courts hold that a jury award may be overturned if it

10   "shocks the conscience of the court" or if the award is outside the range of

11   substantial evidence in the record.  *Green v. McAllister*, 103 Wn. App. 452, 462

12   (2000).

13          Further, a new trial is warranted where the "flavor of misconduct []

14   sufficiently permeate[s] an entire proceeding to provide conviction that the jury

15   was influenced by passion and prejudice in reaching its verdict."  *Kehr v. Smith*

16   *Barney, Harris Upham & Co., Inc*., 736 F.2d 1283, 1286 (9th Cir. 1984) (quoting

17   *Standard Oil Co. of California v. Perkins*, 347 F.2d 379, 388 (9th Cir. 1965)).  To

18   evaluate prejudice from attorney misconduct, courts in the Ninth Circuit consider

19   "the totality of circumstances," which includes "the nature of the comments, their

20   frequency, their possible relevancy to the real issues before the jury, the manner in

which the parties and the court treated the comments, the strength of the case, and

verdict itself." *Hemmings v. Tidyman's Inc*., 285 F.3d 1174, 1193 (9th Cir. 2002).

Remittitur, on the other hand, corrects jury awards that are excessive.

*Pershing Park Villas Homeowners Assoc. v. United Pac. Ins. Co*., 219 F.3d 895,

905 (9th Cir. 2000). When considering remittitur as a remedy for an excessive jury

award, a trial court must view evidence in the light most favorable to the

nonmoving party, *Seymour v. Summa Vista Cinema, Inc*., 809 F.2d 1385, 1387 (9th

Cir. 1987), and may not substitute its own judgment for that of the jury, *D & S

Redi–Mix v. Sierra Redi–Mix & Contracting Co*., 692 F.2d 1245, 1249 (9th Cir.

1982) (citations omitted). Instead, the court must review the evidence and reduce

the award according to the maximum amount substantiated by the proof. *Redi–

Mix*., 692 F.2d at 1249. "Generally, a jury's award of damages is entitled to great

deference and should be upheld unless it is 'clearly not supported by the evidence'

or 'only based on speculation or guesswork.'" *In re First All. Mortg. Co*., 471 F.3d

977, 1001, 1003 (9th Cir. 2006) (quoting *Los Angeles Mem'l Coliseum Comm'n v.

Nat'l Football League*, 791 F.2d 1356, 1360 (9th Cir. 1986). An award is remitted

where it is, "so excessive as to strike mankind, at first blush, as being beyond all

measure, unreasonable and outrageous." *Bunch v. King Cnty. Dep't of Youth

Servs*., 155 Wn.2d 165, 179 (2005) (internal quotation marks omitted).

## I.    Evidence During Trial

Here, the Court finds that Plaintiff's counsels' repeated violations of the *in limine* rulings unfairly influenced the jury's award and warrants a new trial.

First, as a broad overview, this case as it was to be presented to the jury, was about retaliation and wrongful termination.  The Court previously dismissed Plaintiff's claim of hostile work environment and discrimination on Summary Judgment.  ECF No. 94.  In the section of the Summary Judgment Order discussing how racial animus may add to Plaintiff's retaliation claim, the Court noted specifically regarding the January 20, 2021 grievance, "Plaintiff and others testified he was retaliated against for assisting other black drivers with their grievances, many of which were race-based," and found that retaliation described in that grievance may suggest that action was based on the fact that Plaintiff is black.  *Id.* at 38.  In the same Order, the Court stated that an EEOC complaint Plaintiff filed on October 19, 2018, was timely with respect to the relevant statute of limitations, but the discrete acts mentioned therein, such as On Road Supervisor Sam O'Rouke referring to Plaintiff as "boy" and Plaintiff's direct supervisor Matthew Fromherz yelling at Plaintiff to get off the property during his day off, were not.  *Id.* at 37.  The Court likewise dismissed all other evidence of discrete acts predating October 18, 2018, as time barred.  *Id.* at 22.

Then, in its Order on the parties' Motions *in limine* and Objections, the

ORDER GRANTING DEFENDANT'S MOTION FOR NEW TRIAL, AMENDMENT OF THE JUDGMENT, OR REMITTITUR ~ 6

Court explicitly excluded mention of discrete acts contained in the EEOC complaint as time barred and not actionable.  ECF No. 200 at 24, 29.  The Court specifically said:

> Accordingly, the Court *will not allow* testimony about time-barred discriminatory acts mentioned in the EEOC charge, such as Sam O'Rourke allegedly referring to Plaintiff as "boy" and Mr. Fromherz yelling at Plaintiff for picking up a package on his day off. To the extent that Plaintiff intends to offer *other evidence or testimony* of racial discrimination or harassment into the trial record, he must be prepared to specifically articulate how those instances pertain to the remaining two elements of his retaliation claim and/or wrongful termination claim. *Plaintiff shall make any motion for the introduction of such evidence or testimony outside the presence of the jury.*

ECF No. 200 at 29 (emphasis added).

Yet, throughout trial, Plaintiff's counsels disregarded this instruction and mentioned the specific discrete acts denoted by the Court as time barred in the presence of the jury.  During Plaintiff's counsel's opening statement, with the use of slides that highlighted the EEOC complaint, she said:

> In October of 2018, Mr. Gratton filed an EEOC charge . . . It's a federal agency that receives these types of complaints about employment discrimination, harassment, and retaliation. He reported that he was regularly being called "boy" in a racially derogatory manner by his white supervisor. And he also reported that he had filed a complaint about being called "boy" as racially offensive and discriminatory and that he'd been retaliated against.

ECF No. 220 at 81.

During trial, a witness referenced the excluded material, including instances

ORDER GRANTING DEFENDANT'S MOTION FOR NEW TRIAL, AMENDMENT OF THE JUDGMENT, OR REMITTITUR ~ 7

where Plaintiff was referred to as "boy."  ECF No. 220 at 232 (reference to "boy" comment, objection by Defendant sustained).  Over Defendant's objection, Plaintiff's counsel read, verbatim, the EEOC complaint into the record, directly mentioning both "being yelled at and unfairly reprimanded and being thrown off of company property" and "regularly being called 'boy' in a racially derogatory manner by [Plaintiff's] white supervisors."  ECF No. 225 at 142.  And moreover, elicited testimony that was outside the statutory timeframe:

> Q. (by Plaintiff's Counsel): The scrutiny, the route stuff, the overloading the packages, the denying you help -- you know what, I forgot to ask you. Did Mr. Fromherz ever tell you to get off the property?
>
> A. (by Plaintiff): He did
>
> Defense Counsel: Objection, your Honor. That's specifically outside the time period.
>
> Plaintiff's Counsel: Oh, it is? I'm sorry. If that's outside the time period, I'll take your representation. That explains why it wasn't in my outline.

ECF No. 225 at 228.

There were instances where Plaintiff's counsel sought information surrounding previously excluded harassment evidence as time barred (ECF No. 225 at 35, 74–75), questioned Fromherz about the EEOC charge related to his "workplace conduct" (ECF No. 229 at 112, Defendant's objection overruled), and continued to attempt to introduce testimony during Fromherz's exam regarding his

"workplace harassment, bullying, and retaliation," over several objections from Defendants (ECF No. 229 at 131). When Defendants objected to Plaintiff's use of other time barred evidence besides the EEOC charge, including whether all drivers who were out late were black, Plaintiff's counsel represented that he understood the distinction between what could permissibly be used to demonstrate retaliatory intent and what could not be used as evidence of the dismissed discrimination claim. ECF No. 225 at 262. The Court instructed Plaintiff's counsel to "toe the line." *Id*.

And finally, in his closing statement, in regard to the first element of 42 U.S.C. §1981, that Plaintiff engaged in protected activity, Plaintiff's counsel said[1]:

> This one's a no-brainer. Mr. Gratton filed an EEOC charge, which is a protected act under all three claims we have alleged. He filed a claim in October of 2018 alleging that he had been called "boy" in a racially derogatory manner by his white supervisor repeatedly. The sheer filing of this charge is protected activity. Period. End of story.

---

[1] The Court reiterates that it addressed this issue directly in the *in limine* rulings, stating that, with regard to the EEOC complaint, "Plaintiff does not need to present evidence of the time-barred events to prove his objectively reasonable belief that Defendant was violating the law by engaging in racial discrimination because the Court already found Plaintiff had met the first prong in its summary judgment order." ECF No. 200 at 25.

ORDER GRANTING DEFENDANT'S MOTION FOR NEW TRIAL, AMENDMENT OF THE JUDGMENT, OR REMITTITUR ~ 9

1   ECF No. 235 at 85.

2        The discussion of the "boy" comment was particularly inflammatory given

3   the abstract nature in which it was presented.  The jury was only given information

4   that "a white supervisor," called Plaintiff "boy," in a racially derogatory manner,

5   and the only white supervisors who testified at trial were Center Manager Erik

6   Loomis and Fromherz, which likely left them to assume it was either Fromherz or

7   Loomis who made the comment, which is untrue and irrelevant as a matter of law.

8   *See Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 347 (9th Cir.

9   1995) (finding that violations of *in limine* rulings were prejudicial to the defendant

10   because they "left the unrebutted impression that Anheaser for years wrongfully

11   interfered" with offers to buy plaintiff's business, which defendant could not

12   present contrary evidence on).  Further, introduction and repetition of such a

13   racially charged comments without providing the Defendant the ability to question

14   the source, given the Court's Motion *in limine* instructions, undoubtably caused

15   injury.  *Id*. (finding that counsel also used inadmissible evidence during closing in

16   an inflammatory manner); *see also Kehr*, 736 F.2d at 1286.

17        In addition to the time barred information, Plaintiff also introduced evidence

18   of Defendant's financial condition without laying a proper foundation or achieving

19   the grant of judicial notice.  ECF No. 200 at 32.  The Court initially bifurcated the

20   issue of punitive damages for which Defendant's financial status would be

ORDER GRANTING DEFENDANT'S MOTION FOR NEW TRIAL,
AMENDMENT OF THE JUDGMENT, OR REMITTITUR ~ 10

necessary, as it found introduction during Plaintiff's case in chief may cause confusion and prejudice. ECF No. 200 at 32. Plaintiff also requested that the Court take judicial notice of Defendant's publicly filed 10-k as evidence of its financial condition, which the Court deferred ruling on unless the issue of punitive damages became relevant. *Id*. at 43. Defendant objected to the request for judicial notice, stating that the 10-k Plaintiff was offering actually belonged to Defendant's parent company, which was not a party to the lawsuit, rather than to Defendant. ECF No. 199 at 5–6. Prior to jury selection, the Court indicated that it no longer considered bifurcation the best option, but never made a ruling to take judicial notice of the proffered 10-k. ECF No. 220 at 9–10.

Then during trial, Plaintiff questioned Loomis, who was neither employed with Defendant at the time nor was Defendant's Rule 30(b)(6) witness, about whether he knew that Defendant was a 90-billion-dollar-a-year company. ECF No. 229 at 31–32. Defendant objected and Loomis replied that he did not. Plaintiff's counsel continued to ask Loomis questions about Defendant's financial status, including whether he was aware that Defendant had $90 billion in annual profits or $6.1 billion in liquid capital, to which Defendant objected and Loomis said no. *Id*. at 32. The Court then gave a limiting instruction, categorizing the information as only to be considered for the purpose of punitive damages, which would be explained in the final jury instructions, and stated to counsel that the witness

1    answered that he did not have knowledge of Defendant's financial condition. *Id*. at

2    33. After this exchange, Plaintiff's counsel published an exhibit for Loomis to

3    review and asked, "Mr. Loomis, do you see this is the UPS Form 10-k for 2023?"

4    *Id*. After a back and forth between opposing parties and the witness about who

5    Defendant's current Chief Financial Officer is, the Court instructed Plaintiff's

6    counsel to move on as Loomis did not have sufficient knowledge of Defendant's

7    financial status. *Id*. at 34. In his closing statement, Plaintiff's counsel stated, "This

8    is the only place on earth where nine regular citizens can take a multinational

9    corporation and bring it to its knees and make them listen," despite never

10   successfully presenting evidence that Plaintiff had sued the parent company. ECF

11   No. 235 at 102.

12        At the conclusion of trial, the jury returned a verdict with a $39.6 million

13   award for emotional distress damages stemming from the WLAD, 42 U.S.C.

14   §1981, and wrongful termination claims. This sum is vastly outsized in

15   comparison to other awards for damages in other WLAD, 42 U.S.C. §1981, and

16   wrongful discharge cases. *See Passantino*, 212 F.3d at 504 (upholding $1 million

17   in compensatory emotional distress damages for claims stemming from gender-

18   based workplace retaliation in violation of the WLAD); *Zhang v. Am. Gem*

19   *Seafoods, Inc*., 339 F.3d 1020, 1039, 1040–41 (9th Cir. 2003) (upholding a 42

20   U.S.C. §1981 discrimination award of $223,155 for emotional distress, where part

ORDER GRANTING DEFENDANT'S MOTION FOR NEW TRIAL,
AMENDMENT OF THE JUDGMENT, OR REMITTITUR ~ 12

of Plaintiff's claim included Defendant sending letters to suppliers in his home town in China notifying them of his termination and "ruining his future business . . and reputation"); *Kingston v. Int'l Bus. Machines Corp.*, 21-35548, 2022 WL 3031590, at *2 (9th Cir. Aug. 1, 2022) (finding a $6 million noneconomic damages award for violations of the WLAD "shockingly excessive" where Plaintiff presented evidence that he was terminated for opposing what he believed to be wage theft and race discrimination, and remitting to $1.5 million as the greatest amount a Washington court has awarded in a wrongful termination case); *Johnson v. Albertsons LLC*, 2:18-01678-RAJ, 2020 WL 3604107, at *4 (W.D. Wash. July 2, 2020) (remitting an award for $750,000 in WLAD retaliation emotional damages to $200,000 as grossly excessive in light of the evidence at trial); *Coachman v. Seattle Auto Mgmt., Inc.*, 787 Fed. Appx. 416, 417 (9th Cir. 2019) (upholding $4,677,248 in noneconomic damages stemming from a WLAD claim related to Plaintiff's claim of being fired after he received a medical procedure, stating that "appellants chose to not address damages during their closing arguments"); *Covey v. Port of Seattle*, 2024 WL 5262739 (jury awarding $22.5 million in noneconomic damages for wrongful termination in relation to retaliation, appeal pending); *Tucker v. Senior Housing Assistance Group*, 2024 WL 4183789 (Wash.Super.) (jury awarding $1.5 million in emotional damages for unlawful

1  retaliation, appeal pending).[2] The total here even exceeded the amount Plaintiff's

2  counsel represented to the jury that Plaintiff should be awarded for his emotional

3  distress, $15.7 million.  ECF No. 235 at 100–1.  Compensatory and punitive

4  damages serve different purposes, and outsized awards risk impermissibly turning

5  from redressing a concrete loss suffered by a plaintiff to a function of deterrence

6  and retribution.  *Bell v. Williams*, 108 F.4th 809, 831 (9th Cir. 2024) (internal

7  citation omitted).  This inflated award is doubtless a result of passion or prejudice

8  inflamed by the introduction of time barred evidence that cannot form the basis of

9  the claims Plaintiff could assert at trial, and veers into the realm of punitive rather

10  than compensatory damages.

11     However, this is not to suggest that Plaintiff introduced no evidence to

12  support retaliation or the emotional distress that followed.  To establish a prima

13  facie case of retaliation, a plaintiff must prove (1) he engaged in a protected

14  _____

15  [2] Counsel for Plaintiff represents a recent Washington State decision, *Ellis et al. v.*

16  *University of Washington*, resulted in $10,000,000 in emotional harm damages.

17  ECF No. 289 at 2.  However, in reviewing the Judgment counsel attached, the

18  award ultimately amounted to $2 million *per each plaintiff*, resulting in a $10

19  million overall award.  ECF No. 298 at 26.  This representation "toes the line" with

20  respect to candor before the Court.

ORDER GRANTING DEFENDANT'S MOTION FOR NEW TRIAL,
AMENDMENT OF THE JUDGMENT, OR REMITTITUR ~ 14

1  activity; (2) he suffered an adverse employment action; and (3) there was a causal

2  connection between the two.  *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108

3  (9th Cir. 2008).  An employment action is adverse if it "materially affect[s] [the]

4  compensation, terms, conditions, or privileges of employment," and is "based on

5  retaliatory motive and is reasonably likely to deter the charging party or others

6  from engaging in a protected activity."  *Little v. Windermere Relocation, Inc., 301*

7  *F.3d 958, 970 (9th Cir. 2002)* (internal quotations and citations omitted).

8       As has been discussed ad nauseum throughout the record, the parties

9  stipulated that Plaintiff established the first element, and the jury was instructed as

10  much.  ECF No. 225 at 143–44.  Regarding the remaining issues, the jury could

11  have found that he was exposed to retaliatory efforts while working for Defendant

12  in Yakima based on evidence presented that Loomis and Fromherz did not like

13  Plaintiff's participation in the grievance process and responded by making his job

14  more difficult.  ECF No. 220 at 233–36, 251–52; ECF No. 225 at 10–11, 47–49,

15  55–58, 67–69, 71, 76, 139–41, 149–55, 156–58, 160–63, 166–67, 175–79, 182–86,

16  210–11, 265–69.  That retaliation continued when Plaintiff assumed the role of

17  shop steward and assisted other employees in filing grievances.  ECF No. 225 at

18  74–75, 168.  And while the Court previously found unreasonable the premise that

19  Plaintiff presented sufficient evidence to demonstrate that Karl Leyert, a labor

20  manager for Defendant and the ultimate decision maker to terminate Plaintiff, was

ORDER GRANTING DEFENDANT'S MOTION FOR NEW TRIAL,
AMENDMENT OF THE JUDGMENT, OR REMITTITUR ~ 15

influenced by any personally held retaliatory intent or was influenced by center level management's retaliatory intent (ECF No. 265 at 31–34), the jury was given evidence that it credited surrounding Fromherz and Loomis "wanting [Plaintiff] gone." ECF No. 225 at 32–33; ECF No. 229 at 22–23.  Further, the jury was presented with testimony suggesting that Loomis withheld Plaintiff's wages in a retaliatory manner.  ECF No. 225 at 168–170, 201; ECF No. 229 at 278–81.  There was also discussion about Plaintiff's unaccommodated physical impairments by Loomis, and criticism he faced for having tattoos when other drivers also had them.  ECF No. 225 at 203–04.  Plaintiff himself and others on his behalf described the change in Plaintiff's disposition, emotional state, and physical stress symptoms both while working at UPS and after termination.[3]  ECF No. 225 at 43, 80, 93–109, 187, 228–232, 273–74.

However, the Court also notes weak points in Plaintiff's case that it finds difficult to square with the amount awarded coupled with the prejudicial nature of comments made throughout trial.  Plaintiff was never written up for any infraction

---

[3] Though the Court notes that at the time of trial, Plaintiff was not seeking therapy to aid in symptoms similar to anxiety and depression with physical manifestations that were discussed as emotional distress in response to the retaliation.  ECF No. 225 at 108, 231.

ORDER GRANTING DEFENDANT'S MOTION FOR NEW TRIAL, AMENDMENT OF THE JUDGMENT, OR REMITTITUR ~ 16

1    during his four years at the Yakima facility, despite arguing that he was continually

2    reprimanded for being out late with his deliveries and the aforementioned

3    criticisms. ECF No. 225 at 235. Plaintiff had stated that, at a retail stop to pick up

4    packages for shipping, Defendant's management required him to change his box

5    count to a bag count, thereby depriving him of a bonus due to a smaller pickup

6    count and directing him to break with company policy but had not required a white

7    driver to do so. ECF No. 225 at 139–40. Yet, at trial, testimony was presented

8    that the white driver was also required to change his box count to a bag count,

9    thereby also depriving him of a bonus. ECF No. 229 at 74, 285–86; ECF No. 235

10   at 7–10. And while evidence suggested that Plaintiff did not receive some of his

11   paychecks or related penalties in a timely manner, Defendant presented that it was,

12   at least in part to, due to the effects of the COVID-19 pandemic on industry

13   generally. ECF No. 220 at 200–02; ECF No. 225 at 247–48, 264. And ultimately,

14   Plaintiff received all payments he was owed, including penalties for working

15   overtime and for late payments. ECF No. 220 at 202–03; ECF No. 225 at 248–49;

16   ECF No. 229 at 278.

17         Given the shocking size of the award as compared to the admissible

18   evidence presented at trial, attorney misconduct permeated the trial and resulted in

19   an excessive verdict. *Chen v. City of Medina*, C11-2119 TSZ, 2013 WL 4511411,

20   at *17 (W.D. Wash. Aug. 23, 2013) ("By continually intimating to the jury that

1    racial animus on the part of defendants was demonstrated by the offensive conduct

2    of individuals who were either disciplined for the behavior or disconnected from

3    defendants by the passage of time or a lack of privity, Jones converted an

4    extraordinarily weak case of discrimination into a $2 million verdict, the bulk of

5    which is unsupported by the evidence.  Defendants are therefore entitled to a new

6    trial.").  The Court is thus left with the difficult task of determining how much the

7    jury would have awarded absent the introduction of previously excluded evidence,

8    and ultimately declines to wholesale supplant their judgment.  Much like in

9    *Anheuser-Busch, Inc.*, in which the Ninth Circuit upheld a grant of new trial where

10    counsel elicited and highlighted testimony "with the sole purpose of bringing to the

11    jury something it should not have heard," here the Court is left with the distinct

12    impression that the outsized award is based, at the very least in part, on the

13    statements made by counsel.  69 F.3d at 346–47.  Rather than guess at what the

14    award might have been absent testimony and statements offered in the presence of

15    the jury, the Court finds it necessary to grant a new trial.

16    **II.    Jury Instructions**

17    Defendant next argues that the Court committed reversible error because it

18    did not include the "same decision" defense outlined in *Davis v. Dep't of Labor*

19    *and Industries*, 94 Wn.2d 119, 127 (1980), whereby a defendant may nullify

20    damages by showing through clear and convincing evidence that it would have

ORDER GRANTING DEFENDANT'S MOTION FOR NEW TRIAL,
AMENDMENT OF THE JUDGMENT, OR REMITTITUR ~ 18

reached the same employment decision even if it had not discriminated.  *Davis* has

been challenged in its efficacy, but not yet overruled by the Washington Supreme

Court.  *See Allison v. Hous. Auth. of City of Seattle*, 118 Wn.2d 79, 93 (1991)

("Moreover, the burden-shifting approach used in *Davis* and *Jordan* is inconsistent

with several Washington cases which state that the burden of persuasion remains at

all times on the plaintiff in a discrimination or retaliation claim."); *Mackay v.*

*Acorn Custom Cabinetry, Inc*., 127 Wn.2d 302, 308 (1995); *Wilmot v. Kaiser*

*Aluminum & Chem. Corp*., 118 Wn.2d 46, 72 (1991) ("In light of the public policy

at issue, and in light of the allocation of burdens of proof in a retaliatory discharge

case, balancing the interests here involved weighs in favor of the substantial factor

test for plaintiff's proof of the employer's motivation.").  *But see Haley v. Pierce*

*Cnty. Washington*, 173 Wn. App. 1017 (2013) (finding a *Davis* defense would be

applicable to a plaintiff's claims at trial); *Conti v. Corp. Servs. Grp., Inc*., 30 F.

Supp. 3d 1051, 1066–67 (W.D. Wash. 2014), aff'd, 690 Fed. Appx. 473 (9th Cir.

2017) ("The *Davis* court's version of the same-decision defense, which no

Washington court has overruled or questioned, remains the law in Washington: to

avoid an award of damages (but not attorney fees or costs) an employer who has

discriminated in violation of the WLAD must prove by clear and convincing

evidence that it would have made the same decision even if it had not

discriminated."); *accord Moore v. Lowe's Home Centers*, LLC, 2:14-CV-01459-

ORDER GRANTING DEFENDANT'S MOTION FOR NEW TRIAL,
AMENDMENT OF THE JUDGMENT, OR REMITTITUR ~ 19

RJB, 2016 WL 3960025, at *10 (W.D. Wash. July 22, 2016).

However, the Court does not find it necessary to grant a new trial based on the exclusion of same decision defense as an unsettled area of Washington law and not included in the current pattern jury instructions. The pattern jury instruction that the Court premised its own instructions on states:

> To recover on [his] [her] claim of wrongful termination in violation of public policy,(name of plaintiff)has the burden of proving that a substantial factor motivating the employer to terminate [his] [her] employment was [his] [her] [refusing to commit an unlawful act] [performing a public duty] [exercising a legal right or privilege] [reporting what [he] [she] reasonably believed to be employer misconduct].

> If you find from your consideration of all of the evidence that (name of plaintiff) has not met this burden, then you must find for the defendant (name of employer)[on this claim].

> If you find from your consideration of all of the evidence that(name of plaintiff)has met this burden, then you must find for plaintiff(name of plaintiff)[on this claim].

WPI 330.51 Employment Discrimination—Wrongful Termination in Violation of Public Policy—Burden of Proof, 6A Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI 330.51 (7th ed.).

Before instructions were given, Defendant requested that the Court add the line, "UPS has the burden of proving by clear and convincing evidence that UPS would have made the same adverse employment action towards plaintiff, even if retaliation had played no role in UPS's adverse employment action." ECF No. 235

ORDER GRANTING DEFENDANT'S MOTION FOR NEW TRIAL, AMENDMENT OF THE JUDGMENT, OR REMITTITUR ~ 20

at 61.  This statement seemingly mimics an older version of the pattern

instructions, which included a now omitted paragraph accounting for the *Davis*

"same decision," burden shifting.  *See* WPI 330.51 Employment Discrimination—

Wrongful Termination in Violation of Public Policy—Burden of Proof, 6A Wash.

Prac., Wash. Pattern Jury Instr. Civ. WPI 330.51 (6th ed.).

However, the notes to the most recent pattern jury instructions discuss the

exclusion of this paragraph:

> In *Martin v. Gonzaga University*, 200 Wn.App. 332, 402 P.3d 294 (2017), *affirmed on other grounds*, 191 Wn.2d 712, 425 P.2d 837 (2018), Judge Fearing suggested that the sufficiency of an employer's justification for termination is a question of law for the trial court and not for a jury to decide. *Martin*, 200 Wn.App. at 369. The Washington Supreme Court has yet to decide that issue.

> Until the Supreme Court clarifies this issue, if the trial court determines that the jury should decide whether the employer has met its burden of proving that it had an overriding justification for terminating the plaintiff, an appropriate instruction will need to be drafted.

Given this commentary, the Court exercised its discretion to omit the

defense, especially when considering that damages for all three claims were

decided together on the verdict form.  Pursuant to the pattern instructions that this

Court based its own instructions on, any error in exclusion is not harmful.

### III.    Post-Trial Discovery

Finally, Defendant argues that a new trial is necessary because it discovered

that Derek Tamez, a witness who was deposed but did not appear at trial, told other

ORDER GRANTING DEFENDANT'S MOTION FOR NEW TRIAL, AMENDMENT OF THE JUDGMENT, OR REMITTITUR ~ 21

1    employees at the Yakima facility, "if we lie, we win."  This information was

2    provided to the Court through a declaration of Mark Summerville, a different

3    employee at the Yakima facility, who heard this information from a different

4    employee, Armando Anaya, who heard the information from a different employee,

5    Victor Malonado.  ECF No. 272 at 2.  The declaration also states that Summerville

6    heard from Anaya that a Costco employee who receives UPS deliveries was told

7    by a different employee, Shelby Sauve, that Travis Anderson, who did appear at

8    trial, would receive $2 million for his role in testifying from Plaintiff.  *Id*. at 3.

9    Defendant requests that the Court reopen discovery to determine whether these

10   statements were made.  ECF No. 271 at 25.

11        Newly discovered evidence can form the basis for a new trial where: (1) the

12   evidence was discovered after the trial; (2) the evidence could not have been

13   discovered earlier through a diligent search; and (3) the newly discovered evidence

14   is of such a magnitude that production of it earlier likely would have changed the

15   outcome of the trial.  *Defenders of Wildlife v. Bernal*, 204 F.3d 920, 929 (9th Cir.

16   2000).

17        First, a new trial on this basis is not warranted because all of Summerville's

18   testimony is multiple layers of hearsay and inadmissible.  *Daly v. Far E. Shipping*

19   *Co. PLC*., 238 F. Supp. 2d 1231, 1234 (W.D. Wash. 2003) ("[The] potential

20   testimony does not necessitate a new trial because most of it is inadmissible and

ORDER GRANTING DEFENDANT'S MOTION FOR NEW TRIAL,
AMENDMENT OF THE JUDGMENT, OR REMITTITUR ~ 22

1  because the portions that are admissible would not have changed the outcome of

2  the trial."). Mr. Summerville neither heard any of the statements he is attesting to

3  firsthand, nor did he himself appear at trial. Second, Defendant has not provided

4  evidence that it could not have discovered this information before trial. Simply

5  because Summerville heard these statements after the trial concluded does not

6  mean they were timely, and in fact the statement, "if we lie, we win," if true,

7  suggests that Tamez said it before trial occurred. Similarly, if Anderson was

8  promised $2 million in payment for his testimony, that agreement must have been

9  made before trial began. Third, with respect to the alleged statements of Tamez,

10  Defendant did not demonstrate that the inclusion of this statement would have

11  materially changed the outcome of the trial. The declaration provided by

12  Summerville does not include to whom these statements were made, and Tamez

13  was not a witness at trial.

14      In sum, the Court declines to reopen discovery based on multiple levels of

15  hearsay, especially considering that, excluding Anderson, none of the people

16  described in the declaration or the person giving the testimony appeared at trial.

17  *See Viskase Corp. v. Am. Nat. Can Co.*, 261 F.3d 1316, 1324 (Fed. Cir. 2001)

18  (discussing a district court granting a new trial where an expert witness committed

19  perjury while testifying before the jury).

20

ORDER GRANTING DEFENDANT'S MOTION FOR NEW TRIAL,
AMENDMENT OF THE JUDGMENT, OR REMITTITUR ~ 23

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant's Motion for New Trial, Amendment of the Judgment, or Remittitur (ECF No. 271) is **GRANTED**.  A new trial is granted.

2. The Judgment at ECF No. 266 is **VACATED**.

3. Parties shall file a joint status report within **21 days** of this Order informing the Court when they will be available for a new trial and suggested new pre-trial deadlines.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

DATED February 12, 2025.



THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR NEW TRIAL, AMENDMENT OF THE JUDGMENT, OR REMITTITUR ~ 24